9:15-CV-80328-KAM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re: David A. Failla and Donna A. Failla,

      Debtors.

_____/

David A. Failla and Donna A. Failla,

      Appellants.

v.

CitiBank, N.A., as Trustee for the Certificate
Holders of Structured Asset Mortgage Investment
II Inc., Bear Stearns Alt-A Trust, Mortgage
Pass-Through Certificates Series 2006-7,

      Appellee.

_____/

Appeal from the United States Bankruptcy Court for the
Southern District of Florida, West Palm Beach Division

Corrected Brief of Appellee CitiBank, N.A., as Trustee for the Certificate Holders of
Structured Asset Mortgage Investment II Inc., Bear Stearns Alt-A Trust,
MortgagePass-Through Certificates Series 2006-7

John R. Chiles, Esq.
Florida Bar Number 12539
Jonathan Michael Sykes, Esq.
Florida Bar Number 73176
BURR & FORMAN, LLP
200 S. Orange Ave. Suite 800
Orlando, FL 32801
(407) 540-6600
jsykes@burr.com
Counsel for Appellee

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Citibank, N.A. is chartered under the National Bank Act and is wholly owned by Citicorp.  Citicorp is a Delaware corporation that is wholly owned by Citigroup, Inc.  Citigroup, Inc. is a Delaware corporation and its shares are publicly traded (NYSE Symbol "C").

## <u>TABLE OF CONTENTS</u>

**Page**

I.  **JURISDICTIONAL STATEMENT** ...................................................................1

II.  **STATEMENT OF THE ISSUES and STANDARD OF REVIEW** ..........2

III.  **STATEMENT OF THE CASE** ..................................................................2

IV.  **SUMMARY OF ARGUMENT**....................................................................4

V.  **ARGUMENT**..................................................................................................7

VI.  **CONCLUSION** ..........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Araya v. McLelland*, 525 F.2d 1194 (5th Cir.1976) ............................................. 16
*Burns v. United States*, 501 U.S. 129 (1991) ........................................................ 14
*Columbia Gas Dev. Corp. v. Fed. Energy Regulatory Comm'n.*, 651 F.2d 1146 (5th Cir.1981) ............................................................................................................ 16
*In re Barbara Lee Picciano and Michael L. Picciano*, Case No. 11–36787–BKC–PGH, ECF 44 (Bankr. S.D. Fla. May 22, 2015) ............. 18
*In re Denise Roberts-Dude,* 597 F. App'x 615 (11th Cir. 2015) .............................. 2
*In re Dewsnup*, 908 F.2d 588 (10th Cir. 1990) ...................................................... 23
*In re Jandous Elec. Constr. Corp.*, 96 B.R. 462 (Bankr. S.D.N.Y. 1989) ............ 23
*In re Johnson*, 89 F.3d 249 (5th Cir. 1996) ........................................................... 9
*In re Lair*, 235 B.R. 1 (Bankr. M.D. La. 1999) ................................................... 22
*In re Metzler,* No. 8:12-BK-16792-MGW, 2015 WL 2330131, at *4 (Bankr. M.D. Fla. May 13, 2015) .......................................................................... 9, 10, 17
*In re Plummer*, 513 B.R. 135 (Bankr. M.D. Fla. 2014) ............................. 8, 17, 20
*In re Pratt*, 462 F.3d 14 (1st Cir. 2006) .............................................................. 9
*In re Steinberg*, 447 B.R. 355 (Bankr. S.D. Fla. 2011) ....................................... 7, 9
*In re Steven Franklin and Simone Dockery Franklin*, Case No. 11-20340-RBR, ECF 167 (Bankr. S.D. Fla. June 2, 2015) ................................................................. 18
*In re Taylor*, 3 F.3d 1512 (11th Cir. 1993) ...................................................... *passim*
*In re Toledo*, 170 F.3d 1340 (11th Cir. 1999) ....................................................... 1
*In re Trujillo*, 485 B.R. 238 (Bankr. D. Colo. 2012) ............................... 18, 20, 21
*Jarecki v. G. D. Searle & Co.*, 367 U.S. 303 (1961) ........................................... 16
*Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539 (11th Cir. 1996) ................................... 16
*Keene Corp. v. United States*, 508 U.S. 200 (1993) .............................................. 13
*Russello v. United States*, 464 U.S. 16 (1983) ..................................................... 13
*Stewart Title Guar. Co. v. Roberts-Dude*, 497 B.R. 143 (S.D. Fla. 2013) ............ 2
*Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392 (9th Cir. 1964) ................... 23

<u>Statutes</u>

11 U.S.C. § 704..................................................................................................... 21
11 U.S.C. § 105..................................................................................................... 1, 5
11 U.S.C. § 1303................................................................................................... 14
11 U.S.C. § 1325................................................................................................... 14
11 U.S.C. § 1334................................................................................................... 1
11 U.S.C. § 158..................................................................................................... 1
11 U.S.C. § 362 ................................................................................................ 21, 24

11 U.S.C. § 521 ................................................................................................ *passim*

11 U.S.C. § 541 ................................................................................................ 20

11 U.S.C. § 542 ................................................................................................ 20

11 U.S.C. § 554 ................................................................................................ 19, 22

11 U.S.C. § 722 ................................................................................................ 15

11 U.S.C. § 524 ................................................................................................ 15

11 U.S.C. § 1302 .............................................................................................. 14

28 U.S.C. § 157 ................................................................................................ 1

## **Rules**

Fed. R. Bankr. P. 6007 ..................................................................................... 23

## I.   JURISDICTIONAL STATEMENT

This Court has jurisdiction under 11 U.S.C. § 158(a)(1) to hear this appeal. The Bankruptcy Court has "arising under" subject-matter jurisdiction under 11 U.S.C. § 1334(b) to enter the December 19, 2014 *Order Granting CitiBank's Amended Motion to Compel Debtors to Surrender Real Property Pursuant to Statement of Intention* (the "Order Compelling Surrender"), which was issued pursuant to 11 U.S.C. § 105(a) to enforce the provisions of 11 U.S.C. § 521(a)(2) and Appellee's right to surrender of the Property.[1] *In re Toledo*, 170 F.3d 1340, 1344-45 (11th Cir. 1999) ("'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code."). Furthermore, this matter is a core proceeding because it concerns administration of the estate and affects the adjustment of the debtor-creditor relationship.  28 U.S.C. §§ 157(b)(2)(A) and (O).

---

[1] All capitalized terms not otherwise defined herein are used as defined in the Order Compelling Surrender.

## II.    STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

The single issue on appeal is what actions or inactions, if any, are required of chapter 7 debtors to surrender real property under 11 U.S.C. § 521(a)(2).[2] The standard of review for this appeal is *de novo* because the parties stipulated in the underlying bankruptcy matter that "[t]here are no factual disputes for the Court to determine in ruling on the Motion to Compel." (App. 9, ¶ 20.) *See Stewart Title Guar. Co. v. Roberts-Dude*, 497 B.R. 143 (S.D. Fla. 2013), *aff'd sub nom. In Re Denise Roberts-Dude*, 597 F. App'x 615 (11th Cir. 2015) (where there are no factual disputes, and the only issue on appeal is the bankruptcy court's application of a legal standard, the appellate court's standard of review is *de novo*).

## III.   STATEMENT OF THE CASE

This is an appeal from a final order of the Bankruptcy Court compelling the Appellants to comply with their statutory duty under 11 U.S.C. § 521(a)(2) to surrender real property collateral securing a first priority mortgage held by Appellee. (App. 6 at 13.)  All facts relevant to the issue on appeal are contained in the parties' joint stipulation filed in this appeal as Appellants' Appendix 9.

In 2009, Appellants defaulted on the Mortgage and Appellee initiated a

---

[2] Appellants and Appellee similarly framed the legal issue for the Bankruptcy Court in their joint stipulation: "What actions or inactions, if any, are required of the Debtors to effectively and sufficiently perform their Statement of Intention to surrender the Property." (App. 9, ¶ 20(a).) The Bankruptcy Court also framed the issue as "what the Debtors need to do in order to effectively surrender the Property pursuant to the Bankruptcy Code." (App. 6 at 6.)

foreclosure action against the Property. (App. 9, ¶ 7.) Appellants opposed foreclosure, but then filed a chapter 7 bankruptcy case on August 31, 2011. (App. 9, ¶¶ 8-9.) As required by 11 U.S.C. § 521(a)(2)(A), Appellants filed their Statement of Intention with regard to the Property, in which they represented to the Bankruptcy Court, the chapter 7 trustee, and their creditors that they would surrender the Property. (App. 11 at 1.)  Appellants also scheduled the Mortgage as a valid, undisputed, non-contingent, and liquidated secured claim that over-encumbered the Property. (App. 10 at 13.) Appellants made these representations under penalty of perjury. Based upon  Appellants' representations in the bankruptcy case, the chapter 7 trustee abandoned the Property, and Appellants received a chapter 7 discharge of personal liability for the Mortgage. (App. 13 at 1.) After the bankruptcy case closed, Appellee attempted to complete its foreclosure action against the surrendered Property, but Appellants continued to oppose foreclosure and retain the Property, and remained in default under the Mortgage while enjoying the benefits of the discharge injunction. (App.  9, ¶¶ 18.) Appellants refused to surrender the Property, and Appellee moved to reopen the bankruptcy case to compel surrender of the Property.

Appellants argue that they were only required to "surrender" the Property to the chapter 7 trustee, who abandoned the Property to Appellants, thereby allowing Appellants to retain the Property and oppose foreclosure of the Mortgage. Ironically,

the chapter 7 trustee abandoned the Property *because of* Appellants' sworn representations that the Mortgage over-encumbered the Property and that they did not dispute the validity or enforceability of the Mortgage. If Appellants had properly and legitimately disclosed their disputes regarding the Mortgage, the chapter 7 trustee may have administered, rather than abandoned, the Property. Appellants cannot have it both ways.

The Bankruptcy Court granted Appellee's motion to compel, directed Appellants to cease any further opposition to foreclosure of the Property, and threatened to vacate Appellants' discharge. (App. 6 at 13.) The Bankruptcy Court followed the Eleventh Circuit and other Florida bankruptcy courts in finding that Appellants must surrender collateral to the secured creditor under 11 U.S.C. § 521(a)(2)(B). (App. 6 at 11.) The Bankruptcy Court further determined that the Appellants do not have an absolute right to defend a foreclosure action based upon their sworn representations made to the Bankruptcy Court concerning the validity of the Mortgage and surrender of the Property. (App. 6 at 12.) Lastly, the Bankruptcy Court found that Appellants' persistence in opposing foreclosure, after filing a sworn statement to surrender, could be considered a fraud on the court and jeopardize their discharge. (App. 6 at 12.) Appellants appealed that order. (App. 8.)

## IV.   SUMMARY OF ARGUMENT

According to the Eleventh Circuit, chapter 7 debtors do not generally have a

right to retain property from secured creditors without paying the secured debt, either through reaffirmation or redemption. *In re Taylor*, 3 F.3d 1512, 1517 (11th Cir. 1993). Under the plain language of section 521(a)(2), chapter 7 debtors must surrender property absent reaffirmation or redemption. *Id.*

Appellants filed a statement of intention to surrender Appellee's collateral. (App. 11 at 1.) However, after Appellants' bankruptcy case closed, Appellants retained the collateral and opposed Appellee's foreclosure action (App. 9, ¶ 18), in direct violation of their duty to surrender the collateral. *See Taylor*, 3 F.3d at 1517 ("the plain language of 11 U.S.C. § 521[(a)](2) does not permit a Chapter 7 debtor to retain the collateral property without either redeeming the property or reaffirming the debt"). Appellee moved to reopen the bankruptcy case and compel surrender of its collateral. (App. 9, ¶ 20.) Pursuant to its authority under 11 U.S.C. § 105(a) to issue any order to carry out the provisions of the Code, the Bankruptcy Court entered an order compelling surrender of the collateral and directing Appellants to cease any further opposition to foreclosure of the collateral. (App. 6 at 13.) Appellants appealed that order. (App. 8.)

On appeal, Appellants argue that 11 U.S.C. § 521(a)(2) should be qualified by language that does not appear in the statute, such that the term "surrender" should mean "surrender *to the trustee*," and by implication, *not* to the secured creditor. (Appellants' Br. at 10.)

- 5 -

This argument is in direct conflict with the Eleventh Circuit, which held that chapter 7 debtors may not retain collateral securing a debt unless they reaffirm the secured debt or redeem the collateral, even if the debtors are current on their payment obligations to the secured creditor. *Id*. at 1517. The Eleventh Circuit reasoned that any other interpretation of section 521(a)(2) would give debtors a "head start," not a "fresh start." *Id*. at 1516. The holding in *Taylor* is binding in the Eleventh Circuit, and is equally applicable to this case, where Appellants wish to retain the Property and remain in default.

Further, the plain language of subsection (a)(2) belies the Appellants' argument. Subsection (a)(2) makes clear that the duty to surrender requires a relinquishment of rights to all persons having an interest in the collateral, including the secured creditor. Appellants' efforts to import a qualifier not stated in the statute forces a distorted reading of the statute that does violence to a number of elementary principles of statutory construction, viz., (a) that statutory language should be given its plain meaning, (b) that Congress has evidenced its ability to limit the meaning of terms in other provisions of the statute, and that the absence of such limiting language should be seen as an intentional omission, (c) that the term "surrender" should be interpreted "by the company it keeps" under the maxim *noscitur a sociis*, and (d) that statutes should be construed to give full effect to all sister provisions and not render any provision duplicative or unenforceable. Appellants' effort to limit section 521(a)(2) fails each and every one of these tests. Appellants' argument also

breaks down when viewed in relation to other provisions of the Bankruptcy Code, including 11 U.S.C. § 362(h), which requires a trustee to pay the secured creditor for the right to use certain collateral (i.e., personal property) if the debtor fails to comply with 11 U.S.C. § 521(a)(2).

## V.   ARGUMENT

### A.   PREVAILING LAW OF THE ELEVENTH CIRCUIT REQUIRES AFFIRMANCE OF THE ORDER COMPELLING SURRENDER.

In the Eleventh Circuit, "the plain language of 11 U.S.C. § 521(2) does not permit a chapter 7 debtor to retain property securing a debt without either redeeming the property or reaffirming the debt." *Taylor*, 3 F.3d at 1517. "In this circuit, a chapter 7 debtor has only three options with respect to property subject to a lien or mortgage: (1) surrender the property; (2) redeem the property; or (3) reaffirm the debt." *In re Steinberg*, 447 B.R. 355, 357 (Bankr. S.D. Fla. 2011).

In *Taylor*, the Eleventh Circuit announced the bankruptcy policy behind its holding:

> We recognize Congress intended the bankruptcy laws to provide a debtor a "fresh start" by allowing a debtor to discharge all dischargeable debts while retaining assets that are exempt. *See* 11 U.S.C. §§ 727 and 522, respectively. Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a "fresh start" but a "head start" since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral.

- 7 -

*Taylor*, 3 F.3d at 1516. According to the Eleventh Circuit, chapter 7 debtors do not generally have a right to retain property from secured creditors without paying the secured debt through reaffirmation or redemption:

> Section 521 mandates that a debtor who intends to retain secured property must specify an intention to redeem or reaffirm. Nothing in the plain language of the statute provides a debtor with an option to retain the property and to continue to make payments. Courts must apply the law as enacted by Congress. The statutory language clearly expresses congressional intent, and, in the absence of any ambiguity, this court will not read another meaning into the statute to arrive at a more preferable result.

*Id*. at 1516-17 (internal quotations omitted).

Without question, the Eleventh Circuit has stated *to whom* it believes the duty to surrender is owed: "Surrender provides that a debtor surrender the collateral **to the lienholder** who then disposes of it pursuant to the requirements of state law." *Taylor*, 3 F.3d at 1514 (emphasis added). Although this footnote has been described as dicta,[3] it is far more persuasive than the *Lair* decision relied upon by Appellants, and has been emulated by other bankruptcy courts in Florida and by other Circuit Courts. *See, e.g., Steinberg*, 447 B.R. at 358 ("Under *Taylor*, a debtor unwilling to

---

[3] In Plummer, the judge notes that "the Eleventh Circuit's dictum in *Taylor* provides little guidance." 513 B.R. 135, 142 (Bankr. M.D. Fla. 2014). The judge's question, however, was "[w]hat does § 521(a)(2) require the debtor actually to *do* in order to effectuate his or her intent to surrender?" *Id.* But the judge did not question *to whom* the duty to surrender was owed, concluding that a debtor complies with his duty to surrender "when he allows the secured creditor (or in rare cases the Chapter 7 trustee) to obtain possession by available legal means without interference." *Id.* at 143. The Eleventh Circuit's "dictum," while providing little

reaffirm and unable to pay off the mortgage obligation is required to indicate an intent to surrender the home and to tender the property to the mortgagee."); *In re Metzler*, No. 8:12-BK-16792-MGW, 2015 WL 2330131, at \*4 (Bankr. M.D. Fla. May 13, 2015) ("this Court concludes that relinquishing property and making it available to the secured creditor—i.e., 'surrendering' the property—means not taking an overt act to prevent the secured creditor from foreclosing its interest in the secured property"); *In re Pratt*, 462 F.3d 14, 19 (1st Cir. 2006) ("the most sensible connotation of 'surrender' in the present context is that the debtor agreed to make the collateral available to the secured creditor"). The persuasiveness of the *Lair* decision is questionable at best, even in the Fifth Circuit, which has adopted the Eleventh Circuit's reasoning in *Taylor*.  *In re Johnson*, 89 F.3d 249, 252 (5th Cir. 1996).

More importantly, the Bankruptcy Court rejected the Appellants' argument because it would allow what has already been forbidden by the Eleventh Circuit: a "ride through," where a chapter 7 debtor is not required to surrender property but may instead file a statement of intention to retain the property without reaffirmation or redemption. Another bankruptcy judge in Florida has recently addressed a similar argument—that a chapter 13 debtor "surrenders" property by allowing the automatic stay to terminate—in an opinion addressing whether opposing a state court

---

guidance on how to comply with the duty to surrender, does provide persuasive and clear guidance as to whom the duty is owed: "to the lienholder."

foreclosure is inconsistent with "surrendering" property in either the chapter 7 or chapter 13 context:

> Under [the debtor's] definition of "surrender," a "ride through" would be permissible. After all, "surrender" is complete, under [the debtor's] definition, the moment the automatic stay is lifted, and the creditor is permitted to pursue its state court remedies. If that were the case, a debtor could enjoy possession of the collateral indefinitely while hindering and prolonging the state court process. Moreover, like the "ride through" at issue in *Taylor*, [the debtor's] definition of surrender would also render the other alternatives in § 1325(a)—and § 521—of little value.

*In re Metzler*, 2015 WL 2330131, at *4 (Bankr. M.D. Fla. May 13, 2015).

Likewise, Appellants here argue that surrender was complete when they allowed the chapter 7 trustee to administer the Property. When the trustee ultimately abandoned the Property because it was over-encumbered, Appellants argue that they were permitted to retain the Property from Appellee and oppose foreclosure.

The Appellants' argument is also nearly identical to the "ride through" argument rejected by the Eleventh Circuit in *Taylor*. The Taylors argued that a chapter 7 debtor may choose to retain collateral and remain current on the secured debt, without having to choose surrender, reaffirmation, or redemption. *Taylor*, 3 F.3d at 1514. Similarly, Appellants argue that, even if they choose surrender, they may still retain the Property from the Appellee without having to reaffirm the Mortgage or redeem the Property. There is no material difference between  these positions.    The  Eleventh    Circuit's     pronouncement is equally

applicable to both:

> Allowing a debtor to retain property without reaffirming or redeeming gives the debtor not a "fresh start" but a "head start" since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral.

*Taylor*, 3 F.3d at 1516.

The Eleventh Circuit rejected the position of the Taylors, who only wished to keep the property yet remain current on the secured debt, because it would give them a "head start." Here, Appellants would not only have a "head start," they would have crossed the finish line.

## B.    THE PLAIN LANGUAGE OF SECTION 521(a) DOES NOT SUPPORT APPELLANTS' ARGUMENTS.

With respect to a chapter 7 debtor's duty to "surrender" property securing a scheduled debt, the Code states:

> (a) The debtor shall--
> . . . (2) if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate—
>   (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, . . . file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and
>   (B) within 30 days after the first date set for the meeting of creditors under section 341(a), . . . perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;

> except that nothing in subparagraphs (A) and (B) of this paragraph shall
> alter the debtor's or the trustee's rights with regard to such property
> under this title, except as provided in section 362(h);

11 U.S.C. § 521(a)(2) (underscoring added).

The plain language of section 521(a) requiring the debtor in a chapter 7 case to make a statement of his or her intention "with respect to the retention or surrender" of the property does not suggest that if surrender is elected, the surrender obligation is owed solely to the trustee. By its own terms, section 521(a)(2) is more expansive and suggests an absolute relinquishment of the debtor's rights in the property securing a debt. By contrast, subsection 521(a)(4) requires debtors in any case in which a trustee is serving to "surrender *to the trustee* all property of the estate."

Appellants have argued that because subsection (a)(4) provides that the surrender of property should be made to the trustee, this Court should interpret the surrender required in subsection (a)(2) to also mean "surrender *to the trustee*." But, subsections (a)(2) and (a)(4) are separate and distinct provisions that set forth different duties of the debtor. First, subsection (a)(2) is applicable only in a chapter 7 case, while subsection (a)(4) is generally applicable in all cases where a trustee is appointed. Second, subsection (a)(2) only applies to property that secures a scheduled debt, whereas subsection (a)(4) applies to all property of the estate. Third, subsection (a)(4) requires an unqualified surrender of property to the trustee

immediately upon filing the bankruptcy petition, whereas subsection (a)(2) allows a debtor 30 days to decide whether to surrender or retain collateral securing a scheduled debt, and if the debtor elects surrender, another 30 days to perform the intention to surrender.

When read together, the distinctions between the function and purpose of subsections (a)(2) and (a)(4) become clear. Interpreting the debtor's duty under subsection (a)(2) to mean that the debtor must relinquish his or her rights in that property generally, and to the secured creditor specifically, is not inconsistent with the separate requirements of subsection (a)(4). Congress knew how to specify to whom a particular surrender must be made, and chose *not* to be so specific in subsection (a)(2). "Where Congress includes particular language in one section of a statute but omits it in another . . . , it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Appellants also argue that if Congress intended to require a debtor to surrender collateral "to a secured creditor" under subsection 521(a)(2), it could have done so explicitly, as it did in 11 U.S.C. § 1325(a)(5)(C). (Appellants' Br. at 12.) However, the absence of the phrase "to the secured creditor" does not support insertion of a different phrase, "to the trustee," in subsection 521(a)(2), where

- 13 -

Congress has intentionally left that phrase out. As explained above, specifying that the debtor must surrender collateral to the secured creditor in subsection (a)(2) is unnecessary in light of its statutory context. "An inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent." *Burns v. United States*, 501 U.S. 129, 136 (1991).

Moreover, under 11 U.S.C. § 1325(a)(5)(C), a chapter 13 debtor can only confirm a plan of reorganization with respect to a secured claim if "the debtor surrenders the property securing such claim to such holder." 11 U.S.C. § 1325(a)(5)(C). The absence of a reference to the secured creditor in section 521(a)(2), and the inclusion of it in section 1325(a)(5)(C) simply reflects the structural differences between a chapter 7 case and a chapter 13 case. For example, in a chapter 13 case, the trustee does not have a duty to liquidate, or the power to use or sell, property of the estate; instead, the chapter 13 debtor has the right and power of a trustee to administer property. 11 U.S.C. §§ 1302(b)(1) and 1303.

### C.   SURRENDER UNDER SECTION 521(a)(2) SHOULD BE INTERPRETED "BY THE COMPANY IT KEEPS."

Surrender "does not stand alone, but gathers meaning from the words around it," including reaffirmation and redemption. *See Jarecki v. G. D. Searle & Co.*, 367 U.S. 303, 307 (1961).  In *Jarecki*, the Supreme Court examined whether income derived from developing and manufacturing new products in the drug and camera

industries would qualify for special income tax treatment for "exploration, discovery, and prospecting." *Id.* at 306-07. The taxpayers argued that "discovery" included the invention of new products in any industry. *Id.* Relying upon the maxim *noscitur a sociis*, which means "a word is known by the company it keeps," the court limited the application of "discovery" to "income-producing activity in the oil and gas and mining industries," because "it is difficult to conceive of any other industry" to which all three terms (exploration, discovery, and prospecting) apply. *Id.* at 307.

The term surrender "does not stand alone, but gathers meaning from the words around it," including the words reaffirmation and redemption. *Id.* Subsection (a)(2) makes no mention of the debtor's duties in relation to the trustee, which is addressed in its entirety in subsection (a)(4). 11 U.S.C. § 521(a)(4). On the other hand, subsection (a)(2), in its entirety, explicitly addresses only one subject matter: a debtor's duty to specify how it intends to treat a secured creditor's collateral. The debtor must choose between only three options with regard to collateral: surrender, reaffirm, or redeem. *Taylor*, 3 F.3d at 1517. Reaffirmation and redemption both require a debtor to pay a secured creditor to retain its collateral; reaffirmation renders the personal liability for the secured debt non-dischargeable, and redemption satisfies the secured debt through full payment. 11 U.S.C. §§ 524(c), 722. Put simply, the most logical  interpretation of the  provision when you give meaning to

the other terms in subsection (a)(2) is that a debtor may either elect to retain the collateral by paying the creditor through redemption or reaffirmation, or the debtor may surrender the collateral to the creditor in order to *avoid* paying the creditor. Construing "surrender" to require surrender to the trustee rather than the secured creditor, where the other two alternatives require action in relation to the secured creditor, is a results-oriented analysis that is inconsistent with the purpose and intent of the provision.

### D. APPELLANTS' VIEW OF SECTION 521(a)(2) RENDERS THE STATUTE DUPLICATIVE AND NON-FUNCTIONAL.

Appellants' interpretation of subsection 521(a)(2) creates an inherent conflict with subsection 521(a)(4), and therefore, must be rejected. "[W]hen possible, statutes should be construed so as not to be in conflict with each other." *Araya v. McLelland*, 525 F.2d 1194, 1196 (5th Cir.1976). If possible, subsections (a)(2) and (a)(4) must be reconciled in a way that "produce[s] a symmetrical whole." *Jove Eng'g, Inc. v. I.R.S.*, 92 F.3d 1539, 1559 (11th Cir. 1996) (quoting *Columbia Gas Dev. Corp. v. Fed. Energy Regulatory Comm'n.*, 651 F.2d 1146, 1158 (5th Cir.1981)).

Debtors have a separate and singular duty under subsection 521(a)(4) to surrender all property to the trustee at the commencement of the case. Appellants ask this Court to make this mandate redundant by inserting the obligation to "surrender to the trustee" in subsection (a)(2). If subsection (a)(2) was limited in this fashion, it

would be mere surplusage to subsection (a)(4).  Furthermore, the Code gives a debtor the option to surrender *or retain* collateral under subsection (a)(2), but then mandates that the debtor must surrender <u>all</u> property of the estate, including collateral, to the trustee in subsection (a)(4).  Appellants' interpretation creates inherent and irreconcilable conflicts between the requirements of subsection (a)(2) and subsection (a)(4) of section 521.

Appellants' interpretation of section 521(a)(2) also creates conflict between subparagraphs (A) and (B). "The plain language of section 521[(a)](2)(B) . . . indicates that the debtor must perform some act with respect to the property within a specified period of time." *Taylor*, 3 F.3d at 1516 (emphasis added). Appellants argue that surrendering property to a secured creditor is not an act capable of performance within the specified time period because it "would require a debtor 'to continue his/her performance' by remaining 'quiet and still' whilst the creditor moved through the various phases of the foreclosure litigation in state court." (Appellants' Br. at 15.)

To the contrary, "[s]urrender is not equivalent to foreclosure." *Plummer*, 513 B.R. at 143 (internal quotations omitted). Instead, surrender is the relinquishment of the right to oppose foreclosure. *Metzler*, 2015 WL 2330131, at *5. Relinquishment of the right to retain property is the "act" that a debtor must perform to comply with his duty to surrender, which can be accomplished immediately by ceasing any further action to interfere or impede the creditor's action to take possession of the

- 17 -

collateral. Furthermore, a debtor must withdraw any defenses or papers opposing foreclosure that were previously filed, *see In re Barbara Lee Picciano and Michael L. Picciano*, Case No. 11–36787–BKC–PGH, ECF 44 (Bankr. S.D. Fla. May 22, 2015) (J. Hyman), or even consent to foreclosure, *see In re Steven Franklin and Simone Dockery Franklin*, Case No. 11-20340-RBR, ECF 167 (Bankr. S.D. Fla. June 2, 2015).

In contrast, if section 521(a)(2) only required surrender of property to the trustee, the duty to "perform" under subparagraph (a)(2)(B) would be rendered a nullity. Surrendering property to the trustee does not require the performance of any act by the debtor; surrender to the trustee only requires the debtor to retain the property with a willingness to deliver possession. *In re Trujillo*, 485 B.R. 238, 249-50 (Bankr. D. Colo. 2012). Retaining property "is not a duty that the debtor needs to 'perform,' as the debtor already has possession of the property." *Taylor*, 3 F.3d at 1516.

Appellants' textual interpretation is vulnerable to a *reductio ad absurdum* analysis if one hypothesizes that their interpretation of subsection (a)(2) is correct and requires the debtor to elect whether to surrender or not surrender collateral to the trustee, rather than to the secured creditor. If the debtor elects to surrender, the

election is meaningless because the trustee has already obtained surrender immediately and by operation of law under subsection (a)(4). Alternatively, if the debtor elects to retain the property from the trustee under subsection (a)(2), that election is illusory because, again, the trustee has already received the debtor's rights by an immediate and non-volitional surrender under subsection (a)(4). Finally, if the trustee abandons the property under 11 U.S.C. § 554, which will likely happen if the property is over-encumbered by a mortgage, prior to the filing of a statement of intention, then a decision to surrender "to the trustee" under subsection 521(a)(2) (under the reading urged by Appellants) is no longer possible because the trustee will have divested himself of the property, which would no longer be property of the estate. Essentially, this interpretation reads the election of subsection 521(a)(2) into oblivion.

By contrast, if the election in section 521(a)(2) pertains to the secured creditor, all three of the options—surrender, redeem, or reaffirm—make perfect sense and are internally inconsistent.

### E. SURRENDERING "TO SECURED CREDITOR" IS CONSISTENT WITH THE STRUCTURE AND CONTEXT OF THE BANKRUPTCY CODE.

Appellants also perceive inconsistencies between a debtor's duty to surrender collateral to a secured creditor, and other sections of the Code, including a trustee's duties and rights. Appellants' perception is based upon a misunderstanding of the meaning of the word "surrender" under the Code.

The duty to "surrender" under the Code does not require actual delivery of any property. "The Bankruptcy Code . . . makes a clear distinction between *delivering* and *surrendering* property." *Plummer*, 513 B.R. at 143. "[T]he Bankruptcy Code uses the word 'deliver' when it intends physical turnover of property." *Id.*; *compare* 11 U.S.C. § 542(a) (requiring an entity in possession of certain property of the estate to "deliver [it] to the trustee"), *with* 11 U.S.C. § 521(a)(4) (requiring debtor to surrender all property of the estate to the trustee).

Upon filing a bankruptcy petition, legal title to all property of the debtor automatically vests in the trustee by operation of law, without the need for any deed or act of transfer.  11 U.S.C. § 541; *Trujillo*, 485 B.R. at 250.  But possession and use of the property remain with the debtor. *Id.* at 249. The trustee may demand immediate delivery or turnover of any property of the estate he wishes to administer. 11 U.S.C. § 542(a). "Unless and until, however, a debtor has received the request for delivery, he has fulfilled his obligation to surrender his property to the trustee by listing it accurately, as required by § 521(a)(1), and standing ready to deliver it upon request." *Trujillo*, 485 B.R. at 250.

With this understanding of the Code's distinction between surrender and delivery, any perceived inconsistencies cited by Appellants vanish.

       **i.**     ***Surrender to the Secured Creditor is Consistent with Trustee's Rights and Duties.***

The hanging paragraph at the end of subsection 521(a)(2) provides that a debtor's duty to surrender collateral does not alter the trustee's rights under the Code, "except as provided in section 362(h)." 11 U.S.C. § 521(a)(2). Appellants argue that if a debtor is required to surrender collateral to the secured creditor, the trustee could not liquidate that property as property of the estate. (Appellants' Br. at 15-16.) This argument is flawed. First, the duty to surrender under subsection 521(a)(2) explicitly does not alter the trustee's rights with regard to property of the estate.  11 U.S.C. § 521(a)(2).  Second, the duty to surrender does not require any kind of delivery or transfer of property, to either the secured creditor or the trustee. *Trujillo*, 485 B.R. at 250. Title remains with the trustee, and surrender only requires the debtor to relinquish possessory rights when required. *Id.* Lastly, the automatic stay  under 11 U.S.C. § 362(a) will prevent a secured creditor from taking action to possess surrendered collateral while it remains property of the estate subject to the trustee's administration.  11 U.S.C. §§  362(a), (c).

Appellants further argue that a trustee cannot efficiently close the estate or ensure that debtors comply with their duty to surrender property, as required by 11 U.S.C. §§ 704(a)(1) and (3), if the trustee is required to "police" a state court foreclosure action to determine whether the debtors complied with their duty to surrender collateral to the secured creditor. (Appellants' Br. at 17.)  Yet, to surrender property, a debtor must merely relinquish his rights in the property. A trustee would

not be required to supervise a foreclosure action to ensure compliance with the debtor's surrender obligation because foreclosure is not required in order to "surrender."

Appellants' argument improperly conflates the trustee's duties under subsections 704(a)(3) and 704 (a)(1).  Construing section 521(a)(2) to require surrender to the secured creditor is the only interpretation that gives subsections 704(a)(1) and (a)(3) independent purpose and meaning. A trustee is required to ensure performance of the debtor's statement of intention under section 521(a)(2), even if the collateral is abandoned by the trustee.

### ii. *Surrender to the Secured Creditor is Consistent with Abandonment.*

Appellants next argue that once a trustee abandons property under 11 U.S.C. § 554, it reverts back to the debtor, who is then restored to his pre-petition rights in the property, and he may then unconditionally retain the property and resume opposing foreclosure. The only decision cited by Appellants that discusses abandonment in conjunction with surrender under section 521(a)(2) is *In re Lair*, 235 B.R. 1 (Bankr. M.D. La. 1999), which is not binding on this Court and is in direct conflict with the Eleventh Circuit. In evaluating the Eleventh Circuit's decision in *Taylor*, the *Lair* court declared that "the Eleventh Circuit erroneously understands 'surrender' to refer (or relate) to the debtor's relationship with the creditor ('surrender provides that a debtor surrender the collateral to the

lienholder')." *Id.* at 43 (quoting *Taylor*, 3 F.3d at 1514 n.2).

Abandonment has no bearing on a debtor's duty to surrender property. Abandonment merely describes a function of property leaving the bankruptcy estate, and does not alter or extinguish the debtor's duties with respect to that property. A trustee can abandon property at any time during the case "[a]fter notice and a hearing." 11 U.S.C. § 554(a); Fed. R. Bankr. P. 6007.

The opinions cited by Appellants merely describe abandonment as a transfer, or reversion, of the ownership or possessory rights in property from the bankruptcy trustee to the entity that held those rights prior to the petition date. *See, e.g. In re Dewsnup*, 908 F.2d 588, 590 (10th Cir. 1990) ("Following abandonment, whoever had the possessor right to the property at the filing of bankruptcy again reacquires that right."); *see also Wallace v. Lawrence Warehouse Co.*, 338 F.2d 392, 395 (9th Cir. 1964) ("when a trustee abandons property of the bankrupt, title reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously") (internal quotation omitted).   But, abandonment does not necessarily result in reversion of the property to the debtor. Even a secured creditor, with a pre-petition possessory right to property of the estate, will reacquire that possessory right upon abandonment.   *In re Jandous Elec. Constr. Corp.*, 96 B.R. 462, 466 (Bankr. S.D.N.Y. 1989) (creditor will reacquire possessory interest if it held that interest prior to the filing of bankruptcy).

### iii.     *Appellants' View is in Direct Conflict with 11 U.S.C. § 362(h).*

Finally, section 362(h) is a poignant example of how Appellants' interpretation of section 521(a)(2) is in direct conflict with the Code. Under section 362(h), personal property ceases to be property of the estate and the automatic stay is terminated, by operation of law, if the debtor fails to timely file and perform a statement of intention under section 521(a)(2).  11 U.S.C. § 362(h).  Congress places the burden on the trustee to move for continuation of the automatic stay and provide adequate protection to the creditor in order to administer personal property where a debtor fails to perform his statement of intention under section 521(a)(2).  11 U.S.C. § 362(h)(2). In other words, a secured creditor is entitled to adequate protection under section 362(h) if the debtor fails to perform his duty to surrender property under section 521(a)(2), at least in the context of personal property. 11 U.S.C. § 362(h)(2). If the duty to surrender were owed only to the trustee, the Code would not then require the trustee to protect *the secured creditor* in the event that the debtor failed to comply with that duty. The Code would certainly not divest the trustee of his property in the event that the debtor failed to surrender property to the trustee. Section 362(h) only makes sense if the duty to surrender under section 521(a)(2) is owed to the secured creditor. The secured creditor is the intended beneficiary of the protections under section 362(h) resulting from a debtor's failure to perform his statement of intention under section 521(a)(2);  the secured creditor is  likewise the

intended beneficiary of the duty to surrender property under section 521(a)(2).

## VI.    CONCLUSION

For the reasons set forth above, and upon the authorities cited herein, Appellee respectfully prays that this Court affirm the Order Compelling Surrender.

Respectfully submitted,


/s/ Jonathan M. Sykes
**John R. Chiles, Esq.** (Fla. Bar No. 12539)
Email: jchiles@burr.com
**Jonathan M. Sykes, Esq.** (Fla. Bar No. 73716)
Email: jsykes@burr.com
Secondary Email: lloving@burr.com
**Christine I. Parrish, Esq.** (Fla. Bar No. 0014404)
Email: cparrish@burr.com
**BURR & FORMAN LLP**
200 South Orange Avenue, Suite 800
Orlando, Florida 32801
Telephone: (407) 540-6600
Facsimile: (407) 540-6601
*Attorneys for Appellee*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served via CM/ECF this 8th day of September, 2015 to Michael E. Zapin, Esquire (michaelezapin@gmail.com), 20283 State    Road  7, Suite 400, Boca Raton,    FL 33498, Attorney for Appellant.

*/s/ Jonathan M. Sykes*
Jonathan M. Sykes, Esq.