UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-80328-CIV-MARRA

DAVID A. FAILLA and DONNA A. FAILLA,

Appellants,

vs.

CITIBANK, N.A., as Trustee for the Certificate
Holders of Structured Asset Mortgage Investment
II Inc., Bear Stearns Alt-A Trustee, Mortgage
Pass-Through Certificates Series 2006-7,

Appellee.
_____/

## OPINION AND ORDER

This cause is before the Court on the appeal by David A. Failla and Donna A. Failla ("Appellants" "Faillas") of the order of the bankruptcy court granting Citibank, N.A.'s ("Appellee" "Citibank") amended motion to compel debtors to surrender real property pursuant to statement of intention.  (DE 1.)   The Court has carefully considered the appeal, the briefs of the parties, the entire record on appeal, and is otherwise fully advised in the premises.

I. Background

The facts, based upon Appellants and Appellee's statement of facts in their appellate briefs and the appellate record, are as follows:

In 2009, the Faillas defaulted on their note and mortgage for real property and Citibank initiated a foreclosure action.  The Faillas opposed the foreclosure, but then filed a chapter 7 bankruptcy case on August 31, 2011.  As part of that bankruptcy proceeding, the Faillas stated they own real property, encumbered by a mortgage.  They also stated that the mortgage is a valid

first mortgage lien on the property and represents an undisputed, non-contingent, liquidated and secured claim over the Faillas and the property. The Faillas stated further that the amount they owned pursuant to the loan exceeded the value of the property. The Faillas filed their statement of intention with respect to the property and represented that they would surrender the property.[1] Thereafter, the Faillas attempted to amend their statement of intention and sought to declare an intention to reaffirm the mortgage and loan. The amendment was untimely and invalid. Ultimately, the chapter 7 trustee abandoned the property. On December 16, 2011, the bankruptcy court issued an order discharging the debtors. Subsequently, the state court set a non-jury trial for August 21, 2013 regarding the foreclosure. The Faillas opposed Citibank's foreclosure action and have retained possession and title to the property.

In response to the Faillas' defense of the foreclosure action, Citibank moved the bankruptcy court to compel surrender of the property. The Faillas opposed this motion, contending that they already surrendered the property to the bankruptcy trustee, who abandoned it. According to the Faillas, once the trustee abandoned the property, it reverted to them and they were restored their prepetition rights. In other words, the Faillas claim that the "surrender" was properly made to the trustee, not Citibank, and that as a result of the trustee's abandonment of the property, they are free to defend against the foreclosure.

On December 19, 2014, the bankruptcy court addressed the following issues: "(1) [w]hat actions or inactions, if any, are required of the [Faillas] to effectively and sufficiently perform their Statement of Intention to surrender the property?; (2) [w]hat remedies or rights are available

---

[1] In the bankruptcy case, the Faillas claimed a "wildcard" exemption and never reaffirmed the mortgage, redeemed the property or modified the loan.

2

to Citibank for the [Faillas'] failure to comply with their obligation to perform their Statement of Intention to surrender the Property?; and (3) [d]oes the 'exception' language of 11 U.S.C. § 521(a)(2)(B) - which states that 'except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or trustee's rights with regard to such property under this title, except as provide in section 362(h)' - implicitly permit a debtor to lawfully defend a foreclosure action as a matter of 'right' of such property ownership?"

The bankruptcy court began its analysis with a discussion of the term "surrender," which is not defined in section 521(a)(2)[2] or anywhere else in the bankruptcy code. The bankruptcy court interpreted Taylor v. AGE Fed. Credit Union (In re Taylor), 3 F.3d 1512 (11th Cir. 1993) as requiring a debtor who is unwilling to reaffirm or redeem the mortgage obligation to indicate an intent to surrender the home and tender the property to the mortgagee. The bankruptcy court also held that while the Faillas do not have to physically surrender the property to Citibank, they could not defend against or contest the foreclosure in state court. Lastly, the bankruptcy court ruled that if the Faillas did not surrender the property, their bankruptcy discharge would be in jeopardy.

On appeal, the Faillas make the following arguments: (1) the bankruptcy court erred in finding that the Faillas were required under section 521(A)(2) of the bankruptcy code to surrender the property to Citibank as opposed to the bankruptcy trustee, as the Faillas did and (2) the bankruptcy court ignored section 554(c) and the ramifications of what an abandonment back to a debtor means. In response, Citibank asserts that section 521(a)(2) and Eleventh Circuit case

---

[2] Section 521(a)(2) addresses the debtor's statement of intention to surrender, reaffirm or redeem property in which a creditor has a secured interest.

law mandates that chapter 7 debtors not retain collateral securing a debt unless they reaffirm or redeem the collateral, even if the debtors are current on their payment obligations. Citibank argues that under section 521(a)(2), the duty to surrender requires relinquishment of rights to all persons having an interest in the collateral, including the secured creditor.

II. Legal Standard

The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. In re Globe Manufacturing Corp., 567 F.3d 1291, 1296 (11th Cir. 2009); In re Club Assoc., 951 F.2d 1223, 1228-29 (11th Cir. 1992). An appellate court may affirm the lower court "where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected" by the lower court. Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir. 1992).

III. Discussion

The Bankruptcy Code provides:

(a) The debtor shall -
. . .
(2)  if an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate–

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; and

(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph;

>except that nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h);

11 U.S.C. § 521. If a debtor retains nonexempt collateral under section 521(a)(2), the debtor has the options of reaffirmation, redemption or surrender. In re Plummer, 513 B.R. 135, 141 (Bankr. M.D. Fla. 2014); In re Steinberg, 447 B.R. 355, 357 (Bankr. S.D. Fla. 2011).

The parties ask the Court to decide whether the bankruptcy court erred in finding that the duty to surrender is owed solely to the lienholder as opposed to another entity, such as the bankruptcy trustree. Several cases have held that surrender must be made to the lienholder, but those cases did not consider whether the bankruptcy code allows for surrender to any other entity, such as the bankruptcy trustee. See Taylor, 3 F.3d at 1514 n.2 ("Surrender provides that a debtor surrender the collateral to the lienholder who then disposes of it pursuant to the requirements of state law."); In re Pratt, 462 F.3d 14, 18-19 (1st Cir. 2006) ("the most sensible connotation of 'surrender' in the present context is that the debtor agreed to make the collateral available to the secured creditor-viz., to cede his possessory rights in the collateral-within 30 days of the filing of the notice of intention to surrender possession of the collateral"); Steinberg, 447 B.R. at 358 ("a debtor unwilling to reaffirm and unable to pay off the mortgage obligation is required to indicate an intent to surrender the home and to tender the property to the mortgagee.").

The Faillas rely upon In re Lair, 235 B.R. 1 (Bankr. M.D. La. 1999). In Lair, the bankruptcy court held that "surrender" is an option for the debtor who chooses not to use the bankruptcy alternatives of reaffirmation or redemption and to allow the debtor to instead surrender rights in the asset to the bankruptcy trustee. Id. at 65. If the bankruptcy trustee

5

abandons the asset back to the debtor during the case due to a lack of equity or if the property is returned at the end of the case by operation of law, then the debtor and creditor are left to state law remedies. Id. at 13. In other words, the debtor's surrender would have no effect on the debtor's state law rights with respect to the creditor.

Notably, Lair distinguished the Eleventh Circuit case of Taylor supra. In Taylor, the Eleventh Circuit rejected what was called the "ride-through option," which allowed a chapter 7 debtor to retain the collateral property and make payments without either redeeming the property or reaffirming the debt. Taylor, 3 F.3d at 1517. As stated by the Eleventh Circuit in Taylor, "[a]llowing a debtor to retain property without reaffirming or redeeming gives the debtor not a 'fresh start' but a 'head start' since the debtor effectively converts his secured obligation from recourse to nonrecourse with no downside risk for failing to maintain or insure the lender's collateral." Taylor, 3 F.3d at 1516. Taylor provided in a footnote that "[s]urrender provides that a debtor surrender the collateral to the lienholder who then disposes of it pursuant to the requirements of state law." Id. at 1514 n.2  Lair disagreed with Taylor, stating that "the Eleventh Circuit erroneously understands 'surrender' to refer (or relate) to the debtor's relationship with the creditor ('surrender provides that a debtor surrender the collateral to the lienholder')." Lair, at 43.

Whether secured property should be surrendered to the trustee or the secured creditor is, in this Court's view, not the critical question. Rather, the critical question is what is the legal effect of the debtor's decision to surrender the property? The Court concludes, consistent with the bankruptcy court's determination, that once the debtor decides to "surrender" secured property, the debtor has abandoned any interest or claim that he may have had to the property as

against the trustee, if the trustee decides to administer the property, or against any secured creditor the debtor listed in the filed schedules as having a valid, undisputed, non-contingent and enforceable secured lien on the property. While the debtor need not physically deliver the property to the secured party,[3] the debtor is precluded from taking any action which would interfere with the secured creditor's ability to obtain legal title to, and possession of, the property through legal means. Defending against a foreclosure proceeding relating to the secured property would be inconsistent with the debtor's stated intention to surrender the property within the meaning of 11 U.S.C. § 521(a)(2). Accord Plummer, 513 B.R. at 143-44.

The Faillas, in reliance upon Lair, make much ado of the fact that the trustee in this case abandoned the property pursuant to 11 U.S.C. § 554(c). Relying further upon cases which state that after the trustee's abandonment, the property "reverts to the debtor and stands as if no bankruptcy petition was filed,"[4] the Faillas assert that because of the trustee's abandonment of the property, they and Citibank "were both restored to their prepetition status quo as though no bankruptcy case had been filed." [DE 13 at 20-21]. Thus, the Faillas contend they may now defend against the secured creditor's attempt to foreclose. This Court concludes that the Faillas misread the statements from courts relative to the restoration of rights that existed prepetition.

If the Faillas' position is correct, there would be no discharge of their personal liability on the note associated with the mortgage on the property. Even the court in Lair recognized that

---

[3] A debtor may have to deliver property to the trustee under 11 U.S.C. § 542(a). Such a delivery was not required in this case since the trustee abandoned the property under 11 U.S.C. § 554(c).

[4] Dewsnup v. Timm, 908 F.2d 588, 590 (10th Cir. 1990); Kane v. Nat'l Union Fire Ins. Co., 535 F.3d 380 (5th Cir. 2008). See DE 13 at 23.

after an abandonment by the trustee, there is a "lingering federal effect" of discharge. Lair, 235 B.R. at 8, 6 and 46. So, are the statements from the courts cited by the Faillas to be taken literally, or must they be read in the context of the cases which laid the foundation for their pronouncements? This Court concludes the latter course is the correct one.

Dewsnup, cited by the Faillas, relied upon the United States Supreme Court case of Brown v. O'Keefe, 300 U.S. 598, 602 (1937) and the Ninth Circuit Court of Appeals case of Wallace v. Lawrence Warehouse Co., 338 F.2d 392, 394 n.1 (9th Cir. 1964) in support of its broad statement regarding reversion to prepetition legal status. Dewsnup, 908 F.2d at 590. In Brown, when discussing the legal effect of an abandonment of assets by the trustee because they were burdensome, the Supreme Court stated "the title stands as if no assignment had been made," quoting from the earlier Supreme Court case of Sessions v. Romadka, 145 U.S. 29, 52 (1892)(emphasis added). In Wallace, the Ninth Circuit stated "[t]he ordinary rule is that, when a trustee abandons property of the bankrupt, title reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously," citing both Brown and Sessions (emphasis added). The court in Wallace went on to state "[t]his is a fiction, and a fiction is but a convenient device, invented by courts to aid them in achieving a just result. It is not a categorical imperative, to be blindly followed to a result that is unjust."

Kane, also relied upon by the Faillas, cited to Lair and 5 Collier on Bankruptcy §554.02[3] (Alan N. Resnick & Henry J. Sommers eds., 15th ed. Rev. 2008). Kane, 535 F.3d at 385. Collier merely cites to Dewsnup without any analysis.[5]

---

[5] The other cases cited by the Faillas also support the conclusion that the "reversion to prepetition status after abandonment" proposition only relates to title to the property. See Gasprom, Inc. v. Fateh, 500 B.R. 598, 606-07 (B.A.P. 9th Cir. 2013)("These statements reflect

Upon a review of all of the cases cited by the Faillas in support of the "restore to status quo" proposition, the Court concludes that the underlying principle which is being espoused is that <u>title</u> to the abandoned property reverts back to the debtor to the same extent as it was held prior to the filing of the bankruptcy.  Any suggestion in the cases that an abandonment by the trustee has a broader or more expansive legal effect on the relationship of the parties relative to the secured property is an overstatement with no authoritative support.  Hence, this Court concludes that an abandonment of secured property by the trustee to the debtor pursuant to 11 U.S.C. § 554(c) only restores <u>title</u> to the debtor as if no bankruptcy petition had been filed.   The abandonment does not affect other aspects of the debtor's rights and responsibilities relative to the property that flow from the bankruptcy.  Just as a discharge of personal liability to pay the obligation on the note survives after abandonment of the property by the trustee, so too does the legal effect of the debtor's decision to surrender the property pursuant to 11 U.S.C. § 521(c)(2).  This legal effect includes a relinquishment of the debtor's interest in the secured property as against the secured creditor, as well as a prohibition against interfering or impeding the secured

---

the unremarkable proposition that, after an abandonment of estate property, the debtor holds the same legal interest in the abandoned property that it held at the time of its bankruptcy filing."); <u>In re Cruseturner</u>, 8 B.R. 581, 591 (Bankr. D. Utah 1981)("The state of the law under the former Act appears to be that title to all property abandoned by the trustee stood as if no bankruptcy had been filed," citing <u>Brown</u>, <u>Sessions</u> and <u>Wallace</u>); <u>In re Jandous Elec. Constr. Corp.</u>, 96 B.R. 462, 466 (S.D.N.Y. 1989)("This legislative reference and attendant definition are in keeping with cases under the former law which hold that title and right to property reverts to its pre-bankruptcy status. Thus, whoever had the possessory right to the property at the filing of the bankruptcy again reacquires that right."); <u>In re CVA General Contractors, Inc.</u>, 267 B.R. 773, 780 n.7 (Bankr. W. D. Tex. 2001)("When a trustee abandons a cause of action, the cause of action is revested in the debtor as if it was never property of the estate," citing <u>Dewsnup</u>); <u>Huren v. Employers Mutual Casualty Company</u>, No. 2:07 CV 1255, 2008 WL 4679359, at *3(W.D. La. Oct. 22, 2008)(the trustee formally abandoned the claim pursuant to §554, and "the interest in the claim reverted to the debtors as though the bankruptcy had never been filed," citing <u>Lair</u>, <u>In re CVA General Contractors, Inc.</u>, and <u>Collier on Bankruptcy</u>).

creditor's efforts to take possession of the property by available legal means. <u>Plummer</u>, 513 B.R. at 143-44. To hold otherwise would permit the debtor to use the "fiction . . . invented by courts to . . . be blindly followed to a result that is unjust." <u>Wallace</u>, 338 F.2d at 394 n.1.

For the foregoing reasons, the Court finds that the bankruptcy court did not err in granting the amended motion to compel debtors to surrender real property pursuant to the statement of intention.

### IV.  Conclusion

Based upon the foregoing, it is **ORDERED AND ADJUDGED** that the decision on appeal of the bankruptcy court is **AFFIRMED**. This case is **CLOSED**, and all pending motions are **DENIED** as moot.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of November, 2015.

_____
KENNETH A. MARRA
United States District Judge